JOHN ROGERS

*v.*

MARY ROGERS.

*Filed at Ottawa March 24, 1892.*

HUSBAND AND WIFE—*power of husband to pledge his wife's land for his debt, on sale under a trust deed.* On August 26, 1878, a husband and wife gave a trust deed on the wife's property to secure a debt of the husband of $240, due in one year, which was a second incumbrance. On August 9, 1879, the husband borrowed $1450 from his brother for the purpose of redeeming the land, agreeing to bid off the property in his name. On September 27, 1879, the husband had the property sold under the trust

deed, and it was struck off to his brother for $358. The brother, in 1883, borrowed $2000 on the land, for which he gave a deed of trust. In 1856 he paid this loan by a sale and conveyance of half of the land: *Held,* that the husband had no right to pledge his wife's land, without her consent, for the loan made by his brother through the trustee's sale, and that the brother was not entitled to a lien on the land for more than $358, the amount bid by him at that sale, and that a court of equity would require the brother to make a quitclaim deed to the wife for the remaining half of the land.

Appeal from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. Henry M. Shepard, Judge, presiding.

It is shown by the pleadings and evidence in this record, that on August 26, 1878, appellee, being the owner in fee of lot 5, in block 5, Cleaverville addition to Hyde Park township, executed and delivered a trust deed thereon to Isaac H. Price, trustee, to secure the payment of a promissory note made by herself and husband on that day to William Harty for $240, due one year after date, with ten per cent interest, payable semi-annually. On the 17th day of September, 1879, said Price, as trustee, conveyed said lot to appellant, John Rogers, the deed purporting on its face to be made in pursuance of a sale of that date under said trust deed. This bill was filed by appellee in the Superior Court of Cook county, to set aside that deed on the ground of fraud. The theory of the bill is, that the sale of September 17, under said trust deed, was not in fact made for the purpose of paying off said Harty note, but was procured to be made by her said husband, Thomas Rogers, for the fraudulent purpose of transferring the title to said property from her to said John Rogers, for the use of himself. Appellant, in his answer, avers that the sale was absolute and unconditional, yet he admits that by an arrangement between himself and said Thomas, said deed from Price, trustee, to appellant, was in the nature of a mortgage, only, to secure a loan of $1450, made, as he says, under the following

circumstances: On the 9th day of August, 1879, said Thomas came to him in Canada, where he resided, and represented to him that he was about to lose this property, there being two mortgages on it, one of which had been foreclosed and the property about to be sold, soliciting from him a loan of money with which to pay off the incumbrance, that he might save the property. In his answer he states that he loaned said sum of $1450 to his brother, Thomas, with the understanding that said Thomas might redeem said property within a reasonable space of time by repaying said loan, together with interest, taxes, etc., but he does not by his answer show how he was to get the title to the property. In his testimony he says: "Anyway, I came to the conclusion that I wouldn't loan any money on a second mortgage; that the only way I would give him the money would be to buy the property and hold it a few years. * * * This was a talk between ourselves, and I gave him the money, and he agreed to buy the property when it was sold, and it was to be mine until such time as I got my money out of it."

Thomas Rogers bid off the property at the trustee's sale, in appellant's name, at $358, and caused the said deed from the trustee to be executed. At the time the trust deed to Price was executed there was an incumbrance on said property to secure a debt due from appellee to Turner & Bond, of $1350. In 1883, Thomas Rogers borrowed $2000 in the name of appellant, securing the same by a trust deed on the property, and paid off said Turner & Bond debt. In February, 1886, Thomas Rogers, still acting in the name of appellant, sold one-half of said lot 5 for $2320, with which he paid off the said last mentioned trust deed, taxes, assessments, etc., claimed as existing against said property, leaving a balance of some $80 in his hands. On the final hearing of this bill, appellee only insisted upon her title to the remaining half of the lot, which appellant still claimed to own. The decree of

the Superior Court was in conformity with the prayer of the bill as to that half of the lot, and the Appellate Court has affirmed that decree.

Messrs. GIBBONS & KAVANAUGH, for the appellant.

Messrs. FREEMAN & WALKER, for the appellee.

Mr. JUSTICE WILKIN delivered the opinion of the Court:

The only question raised by the bill and answer, as we understand them, is, did the appellant, by the arrangement made with his brother, Thomas, and the subsequent bidding in and conveyance of said property by said trustee, Price, acquire such a lien on said real estate, as against appellee, as will in law entitle him to hold it until the loan of $1450 is refunded to him,—in other words, will a court of equity enforce the arrangement alleged to have been made between the husband of appellee and appellant, as against her.

It is conceded that lot 5 was the separate property of appellee, the title of record being in her at the time said trust deed was executed, when the alleged arrangement was made, and when the property was sold by the trustee. There is no pretense that appellee in any way authorized her husband to pledge the same or encumber it to secure any indebtedness, or that she ever ratified any act of his in that regard. In fact, the proof clearly shows that by design of her said husband she was kept in ignorance of said arrangement with appellant and of the sale and trustee's deed, and that she only learned of the same shortly prior to the filing of this bill. She continued to pay the interest on the prior incumbrance until July, 1883. The debt due to Harty was a personal debt of her husband, and he told her before the maturity of the note that he had paid the same. The evidence shows that she would have been amply able to pay off all incumbrances against said property, including the Harty debt, if her husband

had shown a willingness to join her in a mortgage or trust deed for that purpose.    The recitals in the deed from Price, trustee, to appellant, show that on August 9, 1879, when said $1450 loan was made, the trust deed had not been foreclosed. The property had not been advertised.    The Harty debt was not yet due.    There is much evidence to the effect that Thomas Rogers in fact did pay that debt before the sale actually took place; but whether he did or not, there can be no serious question that he was prepared and intended to pay the same out of the money borrowed from appellant, and that he suffered the property to go to sale for the sole purpose of putting the title in appellant, not merely to secure the amount bid for the property, but the $1450.

Independently of the fact that in all these matters Thomas Rogers acted for appellant, and the latter must be held bound by the fraudulent conduct of the former, we are unable to discover upon what principle of law appellee's property could, through the trustee's sale, be pledged as security for her husband's debt without her consent.    No theory has been suggested, and none, we believe, can be, under appellant's own answer and testimony, whereby he could maintain a lien for more than the amount bid in his name at said trustee's sale, and it is by no means clear that he could do even that.    It seems, however, that by the sale of one-half of said lot he has been fully reimbursed to that extent, which by the decree below he is allowed to retain.    All that he is required to do is to quitclaim the property still in his name to appellee.    This decree is as favorable to him as, under the law and evidence, he could expect.

*Decree affirmed.*